UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBORAH ANDREWS,<br>　　　　Plaintiff | : <br> : <br> : | |
| v. | : | 3:08-cv-150 (CFD) |
| | : <br> : | |
| MELODIE J. PEET,<br>　　　　Defendant | : <br> : <br> : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Deborah Andrews, brought this action claiming retaliation against her for the exercise of free speech, in violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983. The defendant, Melodie Peet, moves for summary judgment. For the reasons that follow, the defendant's motion is granted.

**I.　Background**[1]

Plaintiff Deborah Andrews was, at all relevant times, an employee of the State of Connecticut Department of Children and Families at the Riverview Hospital for Children and Youth ("Riverview") in Middletown. Riverview is a state-run psychiatric hospital for children ages five through seventeen that pose a high risk of danger to themselves or others due to emotional disturbances, mental illness, and/or personality disorders. Andrews began working at

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

Riverview around September 1993 and at all times held the position of Children's Services Worker ("CSW"). Defendant Peet was the Director of Facility Operations and Superintendent of Riverview from July 2004 to December 2006.

During 2005, the Department of Children and Families decided to send potentially violent teenage girls from the juvenile justice system to Riverview for court-ordered assessments. Peet subsequently sent a memorandum to all Riverview staff about staffing and safety issues on March 16, 2005. In August and September 2005, Riverview received an influx of children from a closed juvenile detention center. Andrews has described the time as "very violent."

A.      August 2005 Labor Management Meeting

Riverview conducted labor management meetings on the first Thursday of every month, during work hours, on-site at Riverview. Labor management meetings consisted of the union delegates and the labor management committee, which included Superintendent Melodie Peet, Nursing Supervisor Mark Root, Assistant Superintendent Margaret Stewart, Director of Nursing Linda Carabetta, and Assistant Superintendent Deborah Anderson. Union delegates were expected to attend the monthly labor management meetings while the delegates were "on duty." Andrews attended these meetings in her capacity as one of three union delegates. At these meetings, employees were encouraged to voice opinions and concerns regarding the atmosphere at Riverview.

The speech at issue in this matter occurred at the August 2005 labor management meeting. During this meeting Andrews complained about unsafe conditions involving patients assaulting staff members. Andrews stated that she was confronting Peet regarding a patient who

had attacked a staff member. Andrews recalled her speech to be "Why would you tolerate something like this? Why didn't you ship this patient back up to the east campus?"[2] Andrews described that she confronted Peet because she was the superintendent and therefore gave directives to the staff below her. Andrews stated that she believed the comment angered Peet because she criticized Andrews' use of the word "ship," to which Andrews responded "Look, Melodie. Shipped, sent, moved, that should have taken place. You're putting people in danger." Andrews asserts that no profanity was used, but that Peet "glared" following Andrews' remarks. Andrews stated that additional complaints about the working conditions were voiced by the other two union delegates, but that she was "the most outspoken, the most confrontative." This incident was the only time Andrews confronted Peet prior to being placed on paid administrative leave on September 8, 2005.

  B. <u>Additional Relevant Incidents Concerning Andrews</u>

Andrews was involved with multiple incidents during her tenure at Riverview, including a previous placement on administrative leave in 1997. Andrews has struggled with anxiety issues and has been involved with physical incidents with a co-worker. Andrews was also involved with confrontations with patients, including what Andrews referred to as a "big incident" which occurred on September 1, 2005.

In this incident, Dr. Gail DeMarco, a Clinical Psychologist and Child Advocate, alleged that Andrews blocked a female patient who had previously thrown urine at Andrews from

---

[2] The east campus refers to a wing of Riverview Hospital, apparently a different location from where the patient attack occurred.

entering a bathroom to brush her teeth.  Andrews acknowledged that Dr. DeMarco "yelled" at her for blocking the bathroom door, that Andrews filled out an incident report after conferring with Dr. Pershori, the team psychiatrist, and that she did not know if Dr. DeMarco had completed a report because it would have gone directly to Peet's office.  That same day, Dr. DeMarco sent an e-mail to Peet and two other doctors expressing concern that Andrews was unable to maintain the "objectivity and empathy" necessary to appropriately treat the Riverview patients.  Additionally, representatives from the State of Connecticut Office of the Child Advocate, present at Riverview during the September 1, 2005 incident involving Andrews, reported their concerns to the Department of Children and Families regarding the situation, including Andrews' "attitude and demeanor."  The Office of the Child Advocate also expressed concern regarding the way Andrews was "presenting" in front of the patients as well as how she was treating the patients.

Subsequently, Peet conferred with the Department of Children and Families' Human Resources and decided to send Andrews to an examination for psychological "fitness for duty."  On September 8, 2005, Peet placed Andrews on paid administrative leave.

### C. Administrative Leave and Andrews' Complaint

Andrews remained on paid administrative leave for twenty-eight days, during which time she did not work, but continued to receive her regular pay and benefits, including accruing sick and vacation time.  Andrews returned to work on October 18, 2005 after obtaining a physician's report indicating her fitness for duty.  There were no changes in Andrews' job duties, functions, assignments, or compensation on her return.

Andrews alleges that Peet placed her on administrative leave because she complained

about the working conditions at Riverview during the August 2005 labor management meeting. Andrews claims that Peet's actions were in retaliation for Andrews' exercise of her free speech rights protected by the First Amendment to the United States Constitution.

The defendant moves for summary judgment, claiming that Andrews' speech was made in the course of her employment duties and was not protected by the First Amendment. Peet also argues that the undisputed evidence regarding complaints about Andrews' interactions with patients demonstrate the administrative leave was not retaliation for Andrews' speech. Finally, Peet argues that qualified immunity bars relief against her.

## II.    Discussion

### A.    Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When examining a motion for summary judgment the Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. Patterson v. County of

Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). However, a party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

  B. First Amendment Protection of Speech

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate by a preponderance of the evidence that: "(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

Although "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," Connick v. Myers, 461 U.S. 138, 140 (1983) (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)), those rights must be balanced against the rights of an employer "to promote the efficiency of public services performed by its employees." Morris, 196 F.3d at 109. The Supreme Court has held that in assessing the constitutional protections accorded to public employee speech, a court must first determine whether the employee spoke as a citizen on a matter of public concern. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). If not, the First Amendment does not provide a cause of

action based on an employer's reaction to the speech.  Id.  In the Second Circuit, if a public employee either does not speak as a citizen *or* does not speak on a matter of public concern, the employee will not have a First Amendment cause of action based on an employer's reaction. Weintraub v. Bd. of Educ., 593 F.3d 196, 201 (2d Cir. 2010) (citing Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009)).

The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421.  The Court reasoned that employers have a heightened interest in controlling employees' speech made in their professional capacities because "[o]fficial communications have official consequences . . . .  Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment and promote the employer's mission." Id. at 422–23.

The speech does not need to directly concern the speaker's job position to have been made pursuant to official duties.  Speech is considered pursuant to official duties if it "owes its existence to a public employee's professional responsibilities." Id. at 421.  The inquiry is "a practical one [because] [f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 424–25.  The Second Circuit has stated that the converse is also true: "speech can be 'pursuant

to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Weintraub, 593 F.3d at 203.

In Weintraub, the Court of Appeals for the Second Circuit affirmed a district court's dismissal of a teacher's claim that his school retaliated against him following his filing of a formal grievance with the union challenging the assistant principal's decision to refrain from disciplining a student that had thrown books at him in class. Id. at 199–200. The court reasoned that the teacher's grievance was made pursuant to his official duties because it concerned his ability to maintain classroom discipline, which is integral to effective teaching. Id. at 203.

The Second Circuit has also held that a special education counselor's communications regarding a student and the school's lack of physical education and art classes were not protected by the First Amendment. See Woodlock v. Orange Ulster B.O.C.E.S., 281 F. App'x 66, 67–68 (2d Cir. 2008). Because the counselor was "responsible for monitoring her student's behavior, needs, and progress," reporting her concerns was part of her official duties and part of the job she was paid to do. Id.; see also Barclay v. Michalsky, 493 F. Supp. 2d 269, 275 (D.Conn. 2007) (holding that a former nurse could not bring a First Amendment retaliation claim against her former supervisor because complaints made regarding improper use of restraints on patients, staff sleeping on the job, inadequate training, and even suggesting remedies were within the scope of her professional responsibilities) (aff'd, Barclay v. Michalsky, No. 07-3219-cv, slip op. 2010 WL 772899, at *2 (2d Cir. Mar. 8, 2010)).

Andrews asserts that whether part of her job involved complaining about unsafe

workplace conditions is a disputed factual issue that cannot be decided on summary judgment because her written job description contains no such requirement. Here, as in Weintraub, the absence of a written job requirement to raise complaints as to workplace conditions does not mean that an employee who complains does not act pursuant to her job duties. Regardless of the written description, it is clear that Andrews spoke at the August 2005 labor management meeting in her capacity as a union delegate regarding workplace conditions affecting members of her union. The meeting took place during working hours and on hospital grounds. Additionally, Andrews' positions as a CSW and union delegate involved the duty to report on and raise awareness about safety issues in the hospital that affected staff and patients. Raising a complaint about a physical attack on a staff member by a patient falls within this duty.

Therefore, viewing the facts in the light most favorable to the plaintiff, Andrews' statements were made pursuant to her official job duties. Thus, Andrews was not speaking a citizen and her speech was not protected by the First Amendment to the United States Constitution. Because Andrews' speech was not protected, a reasonable jury could not find that the defendant retaliated against Andrews' for an exercise of free speech. The defendant's motion for summary judgment is thereby granted.[3]

---

[3] Because Andrews was speaking as an employee rather than a citizen, the motion for summary judgment is granted without a determination as to whether the speech involved a matter of public concern. Moreover, the inquiries into the existence of an adequate justification for placing Andrews on administrative leave and whether the loss of overtime pay amounts to an adverse employment action are not addressed here. Finally, because the speech does not receive constitutional protection, the defense of qualified immunity is not reached.

### III. Conclusion

Accordingly, the defendant's motion for summary judgment [Dkt # 47 ] is GRANTED and the clerk is ordered to close the case.

SO ORDERED this 21st day of July 2010, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**